Good morning, Your Honors. May it please the Court, Deputy Attorney General Herb Teddeff on behalf of the Respondent. I apologize. I called the wrong party. I apologize. Thank you for beginning even though I said the wrong thing. Thank you, Your Honor. May I reserve five minutes for rebuttal? Yes, of course. Thank you. The District Court erred in granting relief to Petitioner under Section 2254D because there was no clearly established Supreme Court precedent governing Petitioner's claim that the California Supreme Court failed to apply. The cases that the District Court relied on, Rock v. Arkansas and Washington v. Texas, concerned state rules of evidence that arbitrarily and automatically excluded entire categories of evidence. The ruling in this case was a discretionary one. In addition, the evidence was admissible if expert testimony had been admitted to lay a foundation for it. As this Court stated in Brown v. Horrell and Moses v. Payne, the Supreme Court has never addressed the constitutional right to present a defense in the context of the discretionary exclusion of evidence. In addition, the Supreme Court has never held that a criminal defendant who is presenting a defense based on the lack of specific intent to commit the crimes must be permitted to testify about his history of mental health symptoms. Therefore, the California Supreme Court's decision did not run afoul of any clearly established Supreme Court precedent. Petitioner's claim also fails because he cannot meet the Brecht standard. The any error was harmless in this case under Brecht. The evidence overwhelmingly showed that Petitioner engaged in deliberate and goal-oriented conduct. He gathered numerous items from around the house to bind the victim, including a telephone cord and a purse strap that he used to bind her arms, and a nightgown and an electrical cord that he used to bind her ankles. In addition, he put a rag in her mouth and another one over her face to gag her. The evidence that Petitioner wanted to present would not have shown that he lacked the specific intent to commit the crimes. Petitioner wanted to present evidence that he was hearing voices and experiencing flashbacks and blackouts at the time of the crime, and he wanted to present evidence that he'd experienced those things in the past to show that he'd experienced them at the time of the crime. But any evidence as to hearing voices would not have shown that he lacked the specific intent. Indeed, if Petitioner had heard voices telling him to do things like kill the victim, that would in fact have shown his intent. What about blackouts, though? That may be true of voices, but I'm not sure I understand the argument as to blackouts. Well, Petitioner expressly decided not to present an unconsciousness defense, so the evidence of blackouts in light of that would have been irrelevant. Do you mean that Petitioner chose not to have an expert testify in order to have this testimony, or can you explain what you're referring to? There was an, there is, California has an instruction on unconsciousness, and the trial court asked defense counsel if he wanted that instruction given, and he said that he did not want to, that he felt that it was not consistent with Petitioner's testimony. So he specifically decided not to present that instruction on unconsciousness. Was that before or after the decision to not call an expert and present this testimony? That was during the discussion of instructions during the guilt phase, after the ruling that the testimony could not be admitted. But defense counsels stated that his decision was based on Petitioner's testimony. Right. The testimony was limited by the judge, right? The testimony was limited by the ruling that this testimony about the childhood and the blackouts could not be given unless he presented an expert. That had already happened. That's true. Petitioner did testify that he had experienced a blackout at the time of the crimes and these other mental health symptoms as well. But what the trial court said was that expert testimony was necessary in order to present the foundation for all the laundry list of testimony that Petitioner wanted to present that was supposedly relevant to specific intent. As far as flashbacks, Petitioner said that he had a flashback to his mother sleeping with another man before he started to attack the victim. And any evidence as to prior flashbacks to support that also would not have shown lack of intent. In fact, it would have shown his motivation for the crime. If he had attacked the victim because he was Isn't that still relevant to say that he was suffering from psychosis and he had mental issues that, you know, at least if you look under 2254 D2, you know, whether the California Supreme Court unreasonably applied the facts, you know, it seems like it's at least somewhat relevant. I understand you're saying it won't, your argument, but wasn't Jones entitled to at least offer that fact to plead his case, the relevance of that fact? Well, he was the relevance of that fact, to the extent that it went to showing that he was experiencing some sort of mental illness. Petitioner never in fact, presented any evidence that he suffered from any diagnosed mental illness. And that's why the trial court said, you know, we need to have an expert to sort of to tie this relevance to his intent to show that he had some mental illness that prevented him from experiencing these things. But even if it was offered for the purpose of supporting this, some sort of mental psychosis, again, that wouldn't have shown lack of intent. If anything, it would have shown that he was as his mental health experts stated in the penalty phase, that he was actually in acting out against the victim believing or that the object, the victim, the object of the attack was his mother against the victim. And that was showing his intent to express his mixed feelings of sexual attraction and hatred towards his mother. So that evidence, even if it would have in some way helped show that he was suffering some abnormal mental state, it would have in fact shown that he had the intent to commit these crimes. As far as the California Supreme Court making an unreasonable determination of fact, I don't think they said anything that was factually incorrect. They talked about hearing voices and that that petitioner never said he heard voices after. I'm sorry, after the attack, he only said he heard voices after the attack. So that was didn't say anything about the history of blackouts or flashbacks, right? Yeah, petitioner did not talk about a history of flashbacks. But the court didn't. The California Supreme Court did not talk about blackouts or flashbacks. They did. They chose to reject that claim on the harmless error prong and held that any exclusion of that evidence would have been harmless. And again, the the California Supreme Court's determination was reasonable in this regard. They said it was harmless because they they believe that if petitioner had testified, it would have been a recent fabrication because he never told his mental health expert that he had ever experienced these things in the past. Additionally, the evidence would have been harmless because petitioner was essentially trying to corroborate his testimony that he experienced these mental health symptoms at the time of the attack with his own testimony that he experienced them in the past. And it's very unlikely the jury would have found his credibility, that assessment of his credibility would have been affected by his testimony that he experienced them at one time and because he experienced them at another time and from his own testimony that the jury should believe that. So for that reason, any any error was was clearly harmless in this case. Therefore, the district court's judgment should be reversed and the district court should be ordered to resolve all the remaining claims in the petition. If we disagree about the harmlessness determination on the flashbacks and blackouts, there was no earlier determination about whether it was error on those points, right? So what do we do with how we was unreasonable, then you would do a de novo analysis. And under the novel analysis, actually, that makes petitioners claim even harder to meet. Because with the de novo analysis, you really need to look at the entire offer of proof and the exact nature of the ruling in this case. And unlike the claim that was presented in the California Supreme Court regarding just mental health systems symptoms, the And the symptoms were just buried inside that offer of proof. So the trial court's ruling was based on the entire panoply of evidence. And it was perfectly reasonable for the trial court to require expert testimony for admission of that evidence. In fact, in this court's decision in green versus Lambert, this court said that a consequence of having a wanting a defendant wanting to present mental health evidence or that he suffered from mental illness may be that an expert is required to provide context for the jury. So that is a perfect it was a perfectly reasonable ruling by the trial court. And and so regardless of what this court finds with respect to D and the reasonableness of the California Supreme Court's ruling, once we get to de novo review, it's clear that there was no constitutional violation. So in your brief, you focused on this being a discretionary decision and that the cases don't talk about discretionary decisions. But I'm wondering if that's really the best frame to look at this in or whether the issue is more that it's a conditional ruling in the sense that defendant could have presented this evidence as long as he put on an expert that doesn't really go to the court's discretion as much as a choice that the defense had to make. Yes, I agree with that 100%. I think those are both reasons why the decision in this case did not violate any constitutional was did not violate the Constitution. Yes, it was a decision by the defense not to present this evidence. In fact, that's one reason why the evidence in this case clearly was not any was not critical defense evidence, because if it had been critical, the defense could have laid the foundation and presented it. And there's no constitutional violation if evidence that's not even critical is not excluded. So I agree with this court because this was a conditional ruling. And the Supreme Court has never addressed that either. There was the California Supreme Court's decision was proper under 2254 D. And also the claim would fail under de novo review. And we issued an argument order asking you to be prepared to discuss Teague. Could you give us your view on whether this is Teague Bard? Yes, it is Teague Bard because the rule that the district court applied is that a criminal defendant who is presenting a defense based on lack of specific intent must be permitted to testify about his history of mental health symptoms. And that is not a rule that was dictated by existing precedent at the time the judgment became final in this case. Therefore, it is a new rule of constitutional law that is barred by Teague. And it is neither of the exceptions for Teague apply. That's not a substantive rule, nor does a watershed procedural rule. So there is there is there a difference between a new rule of Supreme Court law under EDPA? Are those the same? Are those roughly the same thing? So what a Teague inquiry is, or an inquiry is almost always going to be a Teague inquiry? Is there something? Is there something different there that we would have to take account of? Well, the difference is that Teague does not restrict you to looking only at clearly established Supreme Court precedent, but at the Supreme Court has said that the 22, 2254 D was in many ways a codification of the Teague rule. So yes, it's similar. And in this case, the claim fails for both reasons under 22254 D and T, because there was no clearly established Supreme Court law, and it would require a new rule of law in order to grant relief. I think when you articulated what the new rule would be, you focused on the ability to present mental health evidence, I think is how you articulated it. But I'm interested in why you didn't articulate it as a conditional ability to present mental health evidence, because here defendant wasn't really prevented from presenting mental health evidence, it was just that an expert would be needed. Is that right? Yes. Thank you, Your Honor. And I agree completely. I think it would be helpful to modify that rule to add a conditional, you know, the conditional admission of evidence, because you're exactly right, this evidence could have been admitted with the proper foundation, and it wasn't. And so therefore, the rule is, there's no law that would have, that at the time the judgment came final, that would have, you know, looking at the legal landscape, that would definitely be a new rule of constitutional law. Counsel, where are we procedurally with the district court? If we were to agree with you today, and to reverse Judge Carney on this ruling, how much of the habeas corpus petition is still alive before the district court? Is the IAC claim still before it? Yes, it is. And only one other claim, two other claims have been resolved. The claim that was reversed in 2014 by this court concerning the constitutionality of California's death penalty, and the court also resolved the sufficiency of the evidence claim. But there are many, many other claims that remain to be resolved, both as to the guilt phase and the penalty phase. I am prepared to submit unless there are any other questions. Okay, we'll still give you time for rebuttal. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the court, Nisha Shaw on behalf of Petitioner Appellee Ernest Jones. Today, I'll try to address four areas, time permitting. First, how Mr. Jones satisfies 2254-D-2. Second, the court's question about Teague and the related question about how Mr. Jones satisfies 2254-D-1. Third, and then fourth, how Mr. Jones satisfies the Brecht prejudice standard. And I'd like to start with 2254-D-1. I'm going to start with 2254-D-2 because it is really the plainest way that Mr. Jones is entitled to the NOVA review, and because the state court's clear factual errors are relevant to its unreasonable application of established federal law. Now, the court concluded that Mr. Jones' proposed testimony about flashbacks and blackouts would have been a recent fabrication based on the fact that Dr. Thomas failed to mention any such history. But this was not a fact, and it was actually a clear factual error. Dr. Thomas described Mr. Jones dissociating in the past, specifically during the assault on Ms. Harris in 1985. He also explained that dissociation is psychotic in nature and that Mr. Jones was psychotic at the time of the Harris crime. And he also referenced flashbacks, specifically Mr. Jones' mother being in bed with other men as a traumatic event that was another reason for dissociation to occur in both crimes. That's at ER 287-88. The court relied on this unreasonable determination of the facts to conclude that the jury would not have found Mr. Jones' testimony not credible, and that, too, was unreasonable. Grain and Schaeffer are both clear that the probative weight of testimony is a matter exclusively for the jury to assess, and the jury is the lie detector. And the court failed to consider evidence in the record that contradicted this conclusion, as in Kessler v. Cambra. They failed to consider the evidence of what Dr. Thomas actually said, and they failed to consider that every indication that we have from the record is that the jurors found Mr. Jones credible. The jurors believed him when he said he did not enter the Miller home with the intent to commit any sort of felony, including rape, and they believed him when he said that Pam Miller gave him his mother's jewelry and he sold it before going to the Miller home. And we know that from their verdicts on the burglary and robbery special circumstances, as well as the charges. Well, on the burglary claim, did the jury have to believe that she gave him the jewelry, or does it just believe that he didn't have the specific intent to burglarize the home at the time that he crossed the threshold? I thought that was the instruction that was related to the burglary. That doesn't suggest that he didn't take it. It's just that he didn't have the intent to take it when he walked into the house. That's correct, Your Honor. But what he did say with respect to the burglary was that he did not enter the Miller home with the intent to commit any sort of felony, and the jury clearly believed his testimony. But that doesn't mean that he didn't take the jewelry. He can take the jewelry. He can form the intent to take the jewelry once he gets into the house. He may kill her and then say, well, as long as I killed her, I'm going to take the jewelry. That would not be sufficient to support a burglary claim under the trial court's instruction. That's correct, but the jury also did not reach the lesser-included verdict on theft. The jury could not reach a verdict on even the theft charges. And that was actually an issue that trial counsel conceded in his closing argument, and yet still the jury hung on the question of whether Mr. Jones had committed a theft. With respect to the court's conclusion about error, that also involved an unreasonable determination of the facts. As Judge Friedland alluded to, the court focused in on just one aspect of Mr. Jones' proffered testimony, and that was his prior history of hearing voices. And the court's failure to consider key aspects of the record is evident from the fact that it sidesteps all of the other testimony Mr. Jones wished to present. And by overlooking or ignoring highly probative evidence in assessing error, the court unreasonably determined the facts, as in Taylor v. Maddox. And specifically what the court ignored was Mr. Jones' effort to testify about things like being in bed with his mother and another man when he was a young child, his father finding them and inflicting both physical and sexual violence on his mother as a result, and his mother's severe physical abuse of Mr. Jones, as well as the history of blackouts and visual and auditory hallucinations. And there are three key facts from the record that tell us that the determination about a history of hearing voices being irrelevant to the question of specific intent to rape was unreasonable. And that is that the jury was instructed that evidence of mental disease can be considered for the purpose of determining whether Mr. Jones actually formed the required specific intent. The prosecutor argued in closing that if someone could testify that Mr. Jones had heard voices before the crime, wouldn't the defense have brought them in to testify to quote, that most crucial part of the case? And finally, the prosecutor presented the testimony of the prior rape victim to prove specific intent to rape Ms. Miller, and then prevented Mr. Jones from testifying that he hallucinated and dissociated during this crime. Now, in light of this record, D2 is satisfied because this court cannot reasonably conclude that the state court's findings are supported by the record as in Maxwell v. Rowe. And these clear factual errors and discounting and failing to consider the testimony and other evidence are also an unreasonable application of clearly established federal law. Why didn't trial counsel introduce an expert so that this type of testimony could come in? It seems like perhaps it was some strategic choice to avoid the expert being cross-examined. Or if there was no strategic reason, maybe it's an ineffective assistance of counsel claim. But I mean, I understand why they didn't introduce an expert to allow Mr. Jones to testify about this. There are a couple reasons. Trial counsel was blindsided by the trial court's ruling. He believed, as we believe, that Mr. Jones was entitled to present this testimony. And the case law is clear that a defendant has the right to present a defense of his own choosing. So he can make the decision about which witnesses to call and not to call. And a court... That's a very, very broad statement. I don't think that is supported by the cases. That's an overly broad statement that a defendant has a right to present witnesses. That's a darn well-pleased defense, but I don't think the cases will support that. The court's been quite clear that it is subject to regular evidentiary rules. Well, Feretta v. California and New York v. Hill are clear that a defendant has a due process right to call favorable witnesses, to cross-examine adverse witnesses, and to decide how to present evidence. But he doesn't get to present hearsay. He gets to call his witnesses, and he can call his best witnesses. But if one of them is going to come in and just suppress it, and the defendant doesn't have a right to present hearsay, that's pretty fundamental, isn't it? Or do we have to go back and look at that rule? Well, Your Honor, equally fundamental is a defendant's, or more fundamental, in fact, is a defendant's right to present testimony in his own defense, and specifically to present his own testimony. And what Rock and Chambers tell us is that the court must consider whether the preclusion of testimony is And here, going back to Judge Lee's question, the argument that the State is making that the defendant invited the error by his own actions is an argument that the court rejected in Rock. There, the State court held the defendant responsible for any prejudice resulting from the exclusion of her testimony because she chose to favor on hypnosis, and there was no previous State court ruling on the issue. And that's exactly the situation we have here. State law actually suggested that Mr. Jones could put on this testimony, and he had But the court didn't actually tell him he couldn't. The court just said, you have to have an expert also. So I'm really struggling with how this is equivalent to Rock, where it was a flat-out prohibition on the hypnotically refreshed testimony. Well, Your Honor, by the State's own description, this was a broad preclusion of Mr. Jones' testimony, and it was really a blanket or categorical exclusion because the prosecutor actually objected, after trial counsel gave his proffer, the prosecutor objected that the majority of the evidence that Mr. Jones sought to introduce was irrelevant without an expert. That's at ER 133. And what the court did is it asked Mr. Jones' counsel whether he intended to present an expert. Mr. Jones' counsel actually offered to narrow the scope of the proffer and narrow it to just information about what Mr. Jones had personal knowledge about at ER 135 to 136, and the court said, essentially, if you're not bringing in an expert, he can't testify about any of it. And that's a wholesale exclusion of everything that Mr. Jones wanted to testify about. But it's not, because why is it inappropriate for the court to require an expert? It wasn't an exclusion as long as he also had an expert, and as I understand it, there was an expert available. So I'm just not sure why that counts as an exclusion as opposed to an extra inclusion. It's an exclusion because it was arbitrary and disproportionate to the purposes it was designed to serve. There was no need for an expert for jurors to understand things like the details of what Mr. Jones was picturing when he flashed back to his mother being in bed with another man. So an expert isn't needed for a juror to understand that Mr. Jones had experienced being in bed with his mother, her sexual partner, his sister, and himself, or that he had witnessed his mother stabbing his father, or that he had blacked out and heard voices. We might agree with you, but we'd have to think that it was an abuse of discretion for the trial court to think otherwise. And then we have all the habeas standards on top of that, but just as fundamentally an evidentiary ruling, it seems like one that arguably could go either way. Maybe a court would say, yes, you can do this without an expert, but I'm not sure why it's unreasonable for a court to say you can't do it without an expert. It's unreasonable also because of what the state did here, and that's two things. The state argued and introduced testimony of Mr. Jones' past behavior to prove his specific intent, and there was no expert testimony required for any of that. And the jurors were actually instructed that intent in one incident, the Harris incident, could be used to prove intent in the other incident. And the second issue is that what happens here is that the state really capitalizes on the exclusion of the testimony. And so on cross-examination, the prosecutor goes into great detail with Mr. Jones about what he was thinking at the time of the crime, whether he could explain his conduct, whether he was thinking clearly or not clearly. And when counsel attempts a much more narrow redirect on what was going through Mr. Jones' mind, whether he was thinking clearly, the court excludes that testimony yet again. And so now you have a situation, as in Crane and as in Simmons v. South Carolina, where the court is really disabling Mr. Jones from rebutting the case against him. I've read these transcripts, and one of the things that's troubling about the way that this was presented to the trial court was that this was much broader than actually what you ended up arguing before the California Supreme Court. Before the California Supreme Court, you focused on the flashbacks, the hallucinations, and the voices. When it was presented to the trial court, it was a very, very broad proffer covering his aunt's suicide, the murder of his brother in the street, things that happened when he was a little boy. I mean, it was broad. It didn't just cover crimes. It covered a whole bunch of things. And as I read what the district court said was, well, before I let all of this stuff in, you've got to provide some kind of linkage here. You've got to provide some kind of an expert who can say, here's why this is relevant to what he did. And I'm having a very difficult time figuring out why that's an abuse of discretion under those circumstances. Because it infringed on something as fundamental as Mr. Jones' right to testify, and because, again, the prosecutor's objection here was that the majority, not all of the… Does he have a right to come in and testify about his aunt's suicide? He does, Your Honor. He absolutely does. Any case that you can give us that would help shed light on that one. I mean, this event had occurred, as far as I know, decades before this event and well before the prior events. So, what's the relevance to it? The relevance is under… the case law is DeFantis and Townsville under California law, which says that a lay witness can testify to any mental condition less than sanity. What's the mental condition, though? His aunt takes her life. Many families have been affected by suicide. But what does his aunt's suicide have to do with the specific intent for this crime in 1992? And all the district court… all the trial court was saying was, bring somebody in here who can create that linkage and I'll let you testify to this. But if you're just coming in, then the state says, wait a minute, all he's trying to do is create sympathy. And that's why we allow broader proffers during the penalty phase than we do during the guilt phase. Give us some linkage. Your Honor, the linkage is that the jury was also instructed that they may consider evidence of mental disorder in order to determine specific intent and specific intent to rape in this case. And it is within a juror's common experience that mental illness can be heritable. But importantly, that wasn't… the aunt's suicide was not the only issue here. And Mr. Jones' prior mental health symptoms and his history, what he flashed back to at the time of the crime, that particular history was evidence that he was precluded from testifying about. And that really is the heart of the issue here. Because again, the prosecutor capitalized on the exclusion of that testimony. He argued to the jury that Mr. Jones couldn't bring in anyone who could say that he had hallucinated before. But Mr. Jones could have himself testified to that. I didn't understand the trial court to be limiting you to an expert who could say, I know that he was hallucinating before. I understood the district court to say, before you, Jones, can come in and tell us about hallucinations during your childhood and about lots of really bad things that happened when you were a kid, you've got to be able to have a witness in here that can present some kind of linkage and explain to the jury why this is relevant. That provides a foundation. And then all of this stuff is admissible. And the prosecution, as I read the transcripts, said, we agree with that. Your Honor, that is what the trial court said. What the California Supreme Court said was the opposite, that Mr. Jones would have provided the foundation for the expert testimony. And that is typically how this normally works. Normally, an expert relies on what the defendant says. And here, trial counsel actually said, I would like to see what Mr. Jones says first before I make the decision about whether or not to call an expert. And the trial court, again, prevented him from doing that, prevented him from telling his story to the jury. And as in Rock and Green, that was testimony that was just absolutely fundamental to his defense on the specific intent to rape. The problem is, even if we think that everything the California Supreme Court said was unreasonable, we still have to agree with you on de novo review, and we still have to get past Teague. And I'm having trouble understanding how the conditional nature of this evidentiary ruling doesn't make it outside of the existing case law, which would be a problem under Teague and a problem if we view it as a de novo review question. Your Honor, the clearly established federal law in this case is Rock v. Arkansas, Crane v. Pecky, all of the cases that we cited in our briefing and we've been talking about. And the rule in those cases is that the state may not arbitrarily exclude material portions of a defendant's testimony and that restrictions on a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. And that, again, is exactly the situation we have here. Counsel, I'm not even sure where to begin with the broad language that you've given us. It can't be arbitrary or disproportionate, and how would we possibly make that judgment? The way to make that judgment, Your Honor, is by looking at the state court's broad preclusion of Mr. Jones' testimony. Again, what the trial court did was it said you cannot testify about any of this information unless you bring in an expert, even though the prosecutor wasn't saying that all of it required an expert. And then again, on redirect, disabled him from meeting the state's case against him, disabled him from saying things like he hallucinated or blacked out during the Harris crime when the prosecutor had used that and cross-examined Mr. Jones about that to prove up his specific intent. Is there any case that said at the time that you can't be required to have an expert to explain how events in your past affected your mental state? There's no case that specifically says that, but the cases that we rely on, like Rock and Green, also arguably had a precondition on the testimony. So in Rock, the argument was that if the defendant hadn't undergone hypnosis, then she would have been able to testify about all of this information. And that's the same situation we have here. But we don't know if she even would have remembered if she hadn't undergone hypnosis. That's kind of a hypothetical that I don't know how to conceive of it. There are notes from her interview with the hypnotist in which some of the information about what she remembers is written down, and that's what the court limited her testimony to. How do you deal with the statement in Green that suggests that it would be appropriate to require an expert? In Green, it was the defendant who wanted to introduce the expert testimony, and in that case, the court also said that that was a feature of Washington state law, potentially. And that is not the situation we have here. Here, there is no state law, and the state has pointed to none, that requires an expert for this type of testimony. And in fact, again, state law is to the contrary. We have Townsville and DeSantis that are saying there's no reason why a lay witness cannot testify to any mental condition less than sanity. And the testimony in those cases is about, in Townsville, it's about witnesses' opinion about whether the defendant has an intellectual disability. And in DeSantis, it's about the defendant having memory issues due to his problems with his brain cells. And the court said that that testimony was admissible. If this state judge, though, thought that an expert was needed, for our purposes on federal review, why should we care whether the judge thought that because of a general understanding of rules of evidence or because of a codified statute or anything else? Shouldn't we just view it as a state rule no matter what? No, Your Honor, because it's not a state rule. And in fact, the California Supreme Court, in its opinion, doesn't rely on that state rule because it isn't one. And what this court's inquiry is, is about whether the federal constitution is implicated and whether Mr. Jones' federal constitutional right to testify is implicated. And it certainly is here. But it seems like you're saying it mattered that in Green there was a Washington law. I mean, say there was a California law that supported this ruling, then would that be... I just am not sure why it should make a difference to our federal constitutional analysis, whether there's actually a state law that speaks to this or not. Well, to the extent this court is faulting Mr. Jones for his counsel not being prepared to have an expert testify at that point in the trial, the condition was unreasonable because there was no state law that required that testimony. There was nothing that required Mr. Jones' counsel to be in a position where he could have an expert testify. And we know from the record that he wasn't in a position at that point to testify. Dr. Thomas says in his testimony that he completed his consultation with Mr. Jones on February 1st, which was days after Mr. Jones completed his guilt-based testimony. So counsel simply wasn't in a position to have an expert testify as the court was requiring him to do. I do want to address one matter you raised, Judge Friedland, which is whether this court has to reach Teague. And this court has discretion to reach Teague sua sponte, but it need not and should not because the state has waived the affirmative defense here. Danforth v. Minnesota says that when the state waives the affirmative defense of Teague in district court and this court by failing to properly raise it, the court need not reach the issue. And Supreme Courts and lower courts have held that in litigation occurring after the date Teague was announced in 1989, the burden asserting non-retroactivity belongs to the state and not to federal courts sua sponte. We could find no Ninth Circuit case where the court decided Teague sua sponte after waiver and no U.S. Supreme Court case after 1994. And those cases are collected in Hudson-Liebman section 25.3. Counsel, I want to be very careful on this one. Has the state waived it or forfeited it? The language in Danforth and other cases like Arradondo v. Ortiz of this circuit is waived. Okay, but yes, but waiver has a particular meaning after Olano, which is the Supreme Court's decision, distinguishing between forfeiting, which is a failure to raise something, and waiving, which is an affirmative decision not to raise something. And so, for example, under ENPA, there are certain defenses that the state must affirmatively indicate it is declining to pursue. And that's waiver, but it's not forfeiture. So are we talking about forfeiture here or waiver? Is there any place where California has said, we've decided not to stand on our Teague rights? No, Your Honor, there is no place where California said that. And so this court can reach Teague if it chooses to. But again, this circuit and the U.S. Supreme Court have declined to do so in cases where the state has not raised Teague. And this court actually provided guidance in Arradondo v. Ortiz to the state of California on how to raise Teague as an affirmative defense. And that was that it must raise Teague as an issue and the first issue on appeal. It must articulate the new rule. It must explain why the rule wouldn't have been compelled by existing precedent. And it must explain why the rule didn't fall under one of the exceptions. And the state has done none of that here. The inquiry is so similar to the D1 inquiry, though, that, sorry, I'm not familiar with the case. Arradondo, did you say? Is that a pre-EDPA case or is that post? It's a post-EDPA case, I believe, and it's 365F3rd778. And it suggests that talking about clearly established law is not analogous or close enough to raising the Teague issue to make the same point? It doesn't deal with that specific question. But what it says is that if the state wishes to raise Teague as an affirmative defense, it must do so in the manner that I articulated. But, again, if this court is inclined to reach Teague, Mr. Jones does meet Teague or, I'm sorry, Teague is not a procedural bar to his claim for the same reasons that he satisfies 2254D1. And with my remaining time, I want to turn quickly to direct prejudice. The state has made some arguments that Mr. Jones, that there was evidence of specific intent, and so this court should not find prejudice. Under Codiacos, the inquiry is not whether there is enough to support the result. It is whether the error had a substantial influence or the court is less engraved out as to whether it did so. And here, the state's argument that Mr. Jones' expert opined that he had this specific intent to raise because the expert talked about Mr. Jones' forbidden wish to kill his mother misrepresents the record. Dr. Thomas explains just before and after that that Mr. Jones was dissociating and in an altered state of consciousness during the capital crime, and that this forbidden wish was on a subconscious level or not fully at a level of awareness. And Dr. Thomas' purpose at the penalty phase was also entirely different. It was not to negate the specific intent to raise, but to provide mitigation for the court's consideration regarding penalty. And under Penal Code Section 29, he could not have actually opined on the ultimate question of whether Mr. Jones possessed a specific intent to raise. The state also completes the definition of the affirmative defense of sanity with specific intent, and so a number of the cases that the state cites in its briefing are sanity cases. And in sanity cases, the defendant must prove by preponderance that he doesn't have the ability to appreciate the criminality of this conduct or distinguish between right and wrong. And that's a different standard and a different burden of proof than specific intent. The indicia here that we have that the error had a substantial and injurious impact on the jury's verdict are that the prosecutor described this testimony as going to the heart of the case when he wanted to exclude it. That he described to the jury that the felony murder-rape-murder theory and the specific intent to rape are the real crux of it and the real thing that the jury has to consider here. This is a case where everyone in the case agreed that the whole case turned on whether the jury believed Mr. Jones and his testimony. And the one issue where they found against Mr. Jones on intent was the one issue where his testimony was excluded. In Pry vs. Plyler in footnote 2, Justice Stevens noted that jury deliberations in a typical California capital trial last 12 hours. Here, the deliberations lasted 18 hours over four court days. And the jury asked questions about Mr. Jones' specific intent and the felony murder rule. We ask this court to affirm the district court's order and grant Mr. Jones a new trial free from unconstitutional restrictions on his testimony at which he can tell his own story in his own words. Thank you. Thank you, counsel. Do we still have some time for rebuttal? Thank you, your honors. This court has recognized the ruling in this case was conditional and defense counsel could have presented the evidence if he had presented an expert to lay the foundation. It is pretty clear why defense counsel chose not to present an expert. Dr. Thomas' testimony would have been very damaging to petitioner at the guilt phase. For one, petitioner told Dr. Thomas originally that he had consensual sex with the victims, Mrs. Harris and Mrs. Miller. That would have been very damaging to petitioner's credibility. What's more, based on Dr. Thomas' testimony, there was a big risk that the jury would actually find there was specific intent. Because Dr. Thomas explained that the attack on Mrs. Harris and Mrs. Miller was basically on his mother. That he had a mixed sexual attraction and hatred to his mother and the object of these attacks was his mother. So for purposes of the guilt phase and the elements of the crime, the jury could have very well concluded that he had the specific intent to commit the crimes. Dr. Thomas' testimony may very well have provided mitigating evidence, perhaps to lessen his moral culpability, but it would have been pretty devastating at the guilt phase. So it is clear why trial counsel chose not to present that testimony. Other than Dr. Thomas to talk about generally connections between flashbacks or bad things in a childhood, could we have provided more general testimony than the psychiatrist had actually examined him? I suppose, but that would require speculation. Would that have provided enough foundation? All the trial court was trying to get was a foundation for what he was doing. If you had a psychiatrist come in and say, when kids have bad things happen to them, and they might include the following hypotheticals, the suicide of an aunt, the murder of a brother, promiscuity on the part of your mother, alcoholism, and so on, then the following things are not unlikely. Flashbacks, hallucinations, the hearing of voices. Is the court asking whether an expert could have provided that testimony? I understand why you want to argue that Dr. Thomas would not have made a good witness for the defense at the guilt phase, but I'm trying to figure out whether the defense had other alternatives. I think it would require speculation to assume that there's some expert who could have provided that testimony. But we do know that there was an expert who, in fact, examined the petitioner, and we do know what his findings were. So, perhaps, but certainly that's not enough to say that, to meet the Brecht standard, that there's a possibility that an expert might have existed, because it's equally possible the defense counsel may not have found such an expert. In addition, I'm not sure that the mental health symptoms actually would have shown lack of intent anyway. As I said, in some ways, they might have actually shown the motivation for the crime, that hearing voices, if he was told to kill the victim, or if he had a flashback to his mother and was trying to take his anger out on his mother, the victim, it's quite possible the jury would have used that testimony against the petitioner to show that he had intent. So, I think that's another reason why any error was certainly harmless in this case. Therefore, for the reasons I previously discussed and are set forth in the state's brief, the district court's judgment should be reversed. Counsel, do you want to address whether you have forfeited the Teague argument? No, we raised Teague in our original answer in this case, but we did not argue it in our brief, and we did not argue it because we felt that the 2254D analysis was very similar to Teague and essentially resolved the issue. But we did not affirmatively waive any Teague argument in this case, and in Casperi v. Bolin, the United States Supreme Court said that a court may consider Teague, even if the state does not affirmatively raise it. Thank you, Your Honors. Do my colleagues have any other questions? Then thank you, both sides, for the very helpful arguments. We really appreciate your assistance with this case, and take care and be well, and we are adjourned. Okay, we're adjourned for this session. Stands adjourned.
judges: Bybee, Friedland, Lee